Other points raised in motions to dismiss we consider without merit and for that reason do not discuss.

Formal order overruling motions to dismiss will be entered in Court at Cape Girardeau when Court convenes next.

## JORDAN v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 4403.

District Court, W. D. Missouri, W. D.

May 18, 1948.

Kem, Gordon & Gilmore, of Kansas City, Mo., for plaintiff.

Hogsett, Trippe, Depping & Houts, of Kansas City, Mo., for defendant.

DUNCAN, District Judge.

Plaintiff is a resident of Missouri; defendant, a resident of Connecticut. Plaintiff seeks to recover compensation from defendant under the terms of an accident insurance policy issued by defendant to plaintiff in 1930, insuring plaintiff, among other things, against loss of time, total and partial, resulting from accidental injury. Paragraph (a) of Section 3 of the policy, entitled "Loss of Time—Total and Partial" provides: "If such injury shall not result in any loss specified in Section 1, but shall

immediately, continuously, and totally disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will pay, for the period of such total disability, not exceeding fifty-two weeks, the weekly indemnity specified. After the payment of weekly indemnity for fifty-two weeks as provided in this paragraph the company will continue weekly payments of the same amount thereafter so long as the insured shall be continuously and totally disabled by such bodily injury from engaging in any work or occupation for wage or profit."

Paragraph (b) of the same section provides: "If such injury shall not result in any loss specified in Section 1 but shall, from the date of the accident causing such injury or immediately following total disability, continuously disable and prevent the insured from performing at least one-half of the work essential to the duties pertaining to his occupation, the company will pay for the period of such partial disability, not exceeding thirty weeks, three-fourths of the weekly indemnity specified."

Paragraph (c) of the same section provides: "If such injury shall not result in any loss specified in Section 1 but shall, from the date of the accident causing such injury or immediately following total disability or partial disability as specified in paragraph (b), continuously disable and prevent the insured from performing one or more important duties pertaining to his occupation, the company will pay for the period of such partial disability, not exceeding fifty-two weeks, one-half of the weekly indemnity specified."

At the time the policy was issued, plaintiff was by occupation a special agent for the Fidelity and Deposit Company. Some time after 1930 plaintiff changed his employment to that of traveling representative for a cement sales company. His new duties were comparable in practically all respects to those of his employment at the time the policy was issued.

His territory as salesman for the cement company included Kansas City and seven counties surrounding Kansas City. Later it was reduced to the city of Kansas City and Jackson County. All the premiums were paid and the policy was in effect at the time of the injury alleged to have resulted in plaintiff's disability.

Plaintiff is 43 years of age. Some time prior to 1941 he became a reserve officer in the Army of the United States, holding a first lieutenant's commission. He was called to active duty in February 1941 and sent to Fort Knox in Kentucky. Although commissioned as an infantry officer, he was assigned to duty with a tank corps for training at Fort Lewis in Washington.

In July 1941 while plaintiff was on maneuvers and on a night march in connection with his military training, he stepped into a hole and injured his left knee. He was thrown to the ground and required assistance in returning to his post. Immediately thereafter, by understanding with the commanding officer, he was assigned to office duty at Fort Lewis. He continued to perform such duty until September 1941 when he was transferred to Fort Knox for instruction. During the time he was at Fort Lewis, he and his family lived off the post, and he commuted to the post each day, along with others in a "car pool". The car was parked approximately 100 feet from the office where he worked, and he walked this distance to and from the car. He was transferred to Fort Knox in September 1941 to attend school, along with thirty other officers. On or about October 1, shortly after his arrival at Fort Knox, while in a classroom undergoing instruction, he was struck on the same knee by a part of a mortar and received further injury. Following this accident plaintiff was sent to the hospital where x-rays were taken. The x-rays revealed no broken bones. He was provided with an additional support for his knee and advised to apply hot packs. The knee was swollen and painful and "seemed to get worse". He continued his instruction at Fort Knox for six weeks. Thereafter he was transferred back to Fort Lewis where he remained until January 1942. During that period he continued without loss of time to perform the same type of duties that he had theretofore performed, that is, office work in the office of the supply officer. Plaintiff testified: "I went back to the same duties as before, in supply, as the Commanding Officer had allowed me to return

to that duty because of the additional injury to the knee, and because the first injury hadn't cleared up any."

In January he was again transferred to Fort Knox and assigned to the gunnery department as executive officer. Prior to his assignment to Fort Knox, the gunnery department had been processing approximately 300 men a week. After his arrival the number was increased to 3,000 men a week. Plaintiff performed all the duties as executive officer in coordinating the reorganization and acceleration of the increased number of men processed. He remained at Fort Knox in this position until July 1943 when he was transferred to Camp Campbell, Kentucky. During this period of a year and a half at Fort Knox plaintiff says that there was no improvement in the condition of his knee, but there is no evidence that he had any medical attention for his knee during that period. In September 1943 plaintiff was sent from Camp Campbell to Nichols General Hospital in Louisville, Kentucky, "for a complete examination of the left knee". He was also suffering from some stomach disorder, which he says cleared up. Plaintiff was on crutches three or four days at that time. After ten days in the hospital he returned to Camp Campbell on official limited duty status. Prior to that time no orders or records appear respecting the type of service to which he was assigned, although he was, in fact, on limited duty. On September 25, 1943, about ten days after his return from the hospital and his official assignment to limited duty, he returned to the same hospital where he underwent an operation for gall stones. He remained hospitalized until January 1944. During this period of approximately four months, plaintiff says his knee was swollen and very painful, but no medical treatment was rendered except sedatives to relieve the pain. Upon his release from the hospital in January 1944, he again returned to Camp Campbell on official limited duty status. He was assigned to duty in Battalion Headquarters where he had been before entering the hospital. Plaintiff reentered the hospital in March 1944 "because of the knee". In May 1944 he returned to Fort Knox

for inside duty while awaiting his discharge from the Army. When plaintiff was discharged from the hospital, the Disposition Board of Nichols General Hospital found that: "after thorough examination of this officer and his clinical record, the board finds this officer to be suffering from the following conditions: strain, medial collateral ligament, left knee, moderate, accidentally incurred as a result of stepping into a hole on a night march at Fort Lewis, Washington, in July 1941."

No claim was made by plaintiff against defendant until November 1945, sixteen months after returning from military service and resuming his duties with the cement company. At the time plaintiff entered military service, he was secretary of the company as well as a salesman. While in the service he was elected vice-president of the company. He entered the Army as a first lieutenant and came out a lieutenant colonel.

In his complaint plaintiff alleged that he was injured at Fort Lewis, Washington, in July 1941 and "that said bodily injuries immediately, continuously and totally disabled the Plaintiff and prevented him from performing any and every kind of duty pertaining to his occupation as a special agent for an insurance company and as traveling salesman for a period of 52 weeks from the date of said accident and that subsequent thereto said bodily injuries continuously and totally disabled the Plaintiff and prevented him from engaging in any work or occupation for wage or profit up to the time of the filing of this petition, and Plaintiff is from said cause still so disabled; that Plaintiff, within three months after the date of said accident was confined to a hospital by reason of said bodily injuries for a period exceeding 20 weeks." In his complaint plaintiff claimed $1,300 indemnity for the first 52 weeks, an additional sum of $5,025 for the period from July 1942 to August 12, 1946, and $250 by reason of hospital confinement.

In its answer defendant admitted the execution of the policy and that it was in force at the time of the injury, denied that plaintiff received accidental injuries which disabled him as alleged in his com-

plaint and alleged that plaintiff had failed to comply with the provision of the policy requiring the giving of notice. Paragraph 4 under title "Standard Provisions" provides: "Written notice of injury on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the company."

Paragraph 2 of "Additional Provisions" provides: "This insurance shall not cover * * * injuries, fatal or otherwise, received by the insured * * * (3) while engaged in military or naval service in time of war * * *"

It was also alleged by defendant that plaintiff received his injuries while in military service in time of war. This defense was not pressed. The war had not yet been declared and the policy did not specifically exclude injuries received in military service. Defendant at the trial and now by amendment to its answer and in its brief contends that plaintiff changed his occupation to a more hazardous one when he entered the Army and that he was not incapacitated from performing the duties of his new occupation.

■ I think we might first dispose of defendant's contention that plaintiff failed to give timely notice. Admittedly plaintiff did not give the notice required in paragraph 4 quoted above. Instead, plaintiff insists that defendant waived this provision of the policy. With this contention I agree. Defendant in its brief insisted that waiver, being an affirmative defense, had to be set up by a reply. Defendant is in error. Rule 7(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires a reply only to a counterclaim denominated as such or when a reply is ordered by the court. Rule 8(d) provides that "Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided".

■ In November 1943 while plaintiff was in Kansas City, Missouri on leave, he went to the office of defendant to obtain the address of a Dr. Pipkin, who had taken an x-ray picture of the same knee following an injury in 1931. Plaintiff desired to obtain the x-ray picture from Dr. Pipkin for comparison with the x-ray pictures taken by the Army medical authorities after his injury in 1941. While in defendant's office, plaintiff told some one in authority that he had sustained an injury and might want to make a claim later. This was about 28 months after the injury. Defendant heard nothing further from plaintiff until November 1945 when plaintiff made a claim. This was four years and four months after the injury and sixteen months after plaintiff returned to his job following his discharge from the Army. After plaintiff filed his claim, defendant requested, and plaintiff submitted to, a physical examination. He was examined by Drs. Zuber and Carmichael. At the time of the examination, according to his history record submitted by the physicians, plaintiff complained of many ailments in addition to the injury to his knee. On June 19, 1946, Drs. Zuber and Carmichael submitted a report of the examination to defendant, but not until August 1946 did defendant, by letter to plaintiff, deny liability. Under the terms of the policy the giving of timely notice is not a condition precedent to the right to recover. The statement of plaintiff to some one in the office of defendant more than two years after his injury that he had been injured and might make a claim in the future and the making of a claim more than four years after the injury, without reason or excuse for the delay, did not amount to timely notice; and defendant, had it seen fit to do so, would have been justified in denying liability on that ground alone. However, defendant did not do so. It supplied plaintiff with proofs of loss and requested a physical examination. Not until almost a year thereafter did defendant deny liability on the ground, among others, that plaintiff had not given the required notice. Such conduct by defendant was clearly a waiver of the notice provision of the policy.

There is a definite variance between plaintiff's complaint and his brief in the amount claimed and the basis of the claim. In his complaint plaintiff claimed indemnity for 52 weeks of immediate, continuous, and total disability which prevented him from performing any and every kind of

duty pertaining to his occupation as special agent for an insurance company and as a traveling salesman; indemnity for an additional period of continuous and total disability to the date of filing his petition whereby he was prevented from engaging in any work or occupation for wage or profit; and indemnity for the period of his confinement in a hospital.

At the trial and in his brief plaintiff abandoned his claim for indemnity while hospitalized. He claimed indemnity for 52 weeks of total disability which prevented him from performing his duties as agent for an insurance company and as a traveling salesman; indemnity for an additional 93 weeks of total disability which prevented him from engaging in any work or occupation for wage or profit. Both periods were to be compensated for at the rate of $25 per week. Plaintiff claimed further indemnity at the rate of $18.75 per week for a period of 30 weeks of partial disability which prevented him from performing at least one-half the work essential to the duties of his occupations described above. Plaintiff fixed May 1, 1944, as the date when his total disability ended and his partial disability began; that is, when he was able to perform one-half his normal duties. In view of plaintiff's own testimony, and the inferences to be drawn therefrom, that his knee did not improve but gradually got worse, I cannot understand how he arrived at May 1 as the end of his period of total disability and the beginning of his period of partial disability. Assuming that defendant is liable to plaintiff, in any amount, I cannot see by any stretch of imagination how defendant is liable for the period of 93 weeks during which plaintiff claimed he was unable to engage in any work or occupation for wage or profit. During all that time he performed the duties of an Army officer and received compensation as such. During that period he was promoted from First Lieutenant at a salary of $166 per month to captain at a salary of $232 per month. He was later promoted to major at a salary of $330 per month. These admitted facts, it seems to me, negative plaintiff's claim to indemnity for that period.

Plaintiff's first and third claims present a more difficult factual and legal problem. At the time plaintiff was called to active military duty, he was a traveling salesman using his automobile in calling on purchasers of cement. In addition he did such clerical work as his job required. He was also secretary of his company and while in military service he was elected vice-president. Plaintiff was in military service for four years, and although he performed all his assigned duties, he claims total disability as a salesman despite the fact that during his military service he devoted no time to his prior occupation and could not have done so consistently with his military duties.

Defendant insists that because plaintiff was not a salesman at the time of his injury he cannot recover for disability as a salesman. Plaintiff denies this on the ground that his military service was involuntary and that after discharge he intended to return to his job as salesman. Whether or not plaintiff had changed his occupation, I do not believe he is entitled to recover for the first 52 weeks of alleged disability. I cannot reconcile the terms of the contract with plaintiff's contention that he is entitled to recover compensation for total disability as an insurance representative and as a traveling salesman while performing his duties as an Army officer. Even if that question were not present, and viewing the matter solely from plaintiff's position, I am convinced that he should not recover for the first 52 weeks of alleged disability because I cannot find that he was totally and continuously disabled. The policy provides indemnity for total disability which prevents the insured from performing any and every kind of duty pertaining to his occupation. I do not believe that plaintiff's own evidence proves any such disability following his injury. Although it is true that he was relieved from active field duty, he continued to perform the same duties performed by many other officers not physically incapacitated. In fact, he performed his duties so well that he received two promotions in 1942. He was transferred from Fort Lewis to Fort Knox for special instruction within a few weeks after his first injury.

Although he received there a further injury to the same knee, he continued after returning to Fort Lewis to perform the same military duties as before. Subsequently he was re-transferred to Fort Knox with greatly increased responsibilities. Plaintiff's service in the Army is entirely inconsistent with his contention of total disability from performing any and every duty pertaining to his occupation of salesman. And for the same reasons I am unable to find, as plaintiff claimed, that his injury prevented him from performing one-half of his duties for the period of 30 weeks. The judgment will be for defendant.