CITY OF PALMER, Appellant,

v.

Dale A. ANDERSON, d/b/a Anderson Garbage Service, Appellee.

No. 4118.

Supreme Court of Alaska.

Nov. 30, 1979.

Paul Waggoner, Biss & Holmes, Anchorage, for appellant.

John M. Stern, Jr., Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR and MATTHEWS, JJ., DIMOND, Senior Justice, and MADSEN, Judge (sitting as Supreme Court Justice).

## OPINION

MATTHEWS, Justice.

The City of Palmer appeals from a jury finding that it breached its contract with the appellee, Dale Anderson, doing business as Anderson Garbage Service. Damages were awarded in the amount of $24,424.00.

Anderson purchased his garbage business from his father in 1973. At that time the business included a sanitary landfill operation, garbage collecting equipment, a certificate from the Alaska Public Utilities Commission authorizing garbage and refuse collection from the area immediately outside the city limits of Palmer, and an oral agreement with the City of Palmer under which Anderson's father had collected refuse in the city for many years.

Shortly after buying the business, Anderson determined that he needed to upgrade his equipment and began negotiating the purchase of a larger, more efficient garbage-packer truck. When he contacted his bank for financing, he was told that due to insufficient collateral, a loan could not be arranged unless his agreement with the City was formalized and extended over several years.

Anderson discussed his requirements with Palmer's city manager, William E. Curtis. After preliminary negotiations, a proposed contract was drawn up by the City. The typed provisions in the contract stated that the agreement was to last for one year, with automatic renewal unless one of the parties objected. This provision was unacceptable to Anderson's bank, which wanted a five-year contract guarantee before it would advance the money Anderson needed. Anderson returned to Curtis with proposed changes making the contract a five-year agreement, which could be reviewed annually if necessary to reflect changing costs and expenses. Curtis took the agreement before the Palmer City Council, which approved the contract and authorized Curtis to sign.

Several days later, Curtis and Anderson met to finalize and sign the contract. Their testimony as to what happened at the meeting is in conflict. Anderson testified that a five year contract was signed. According to Curtis, Anderson agreed to a one-year contract after further negotiations. Anderson's copy of the contract supported his claim. The City's copy indicated that the contract was to last only one year.

In his complaint Anderson pleaded that he had fully performed his duties under the contract. The City's answer alleged as an affirmative defense that Anderson had materially breached the contract. The City at trial put on evidence tending to show that it had received many complaints about the garbage collection service and that these had resulted in a warning to Anderson that his contract was in danger. In particular, the City attempted to show that garbage service during July, 1976, was especially bad, that many customers had not been serviced on schedule, and that the resulting sanitation and health problems caused the City to go out on several occasions and pick up garbage on its own. The City also put on evidence indicating that Anderson's sanitary landfill operation had not been run in compliance with the permit issued by the State Department of Environmental Conservation as required by the contract.

Curtis testified that on July 30, 1976, Anderson told him that he was quitting altogether and that as a result the City had been forced to make emergency arrangements to collect garbage and refuse.

The evidence presented by Anderson was in many instances directly contradictory to the City's. Witnesses for Anderson testified that their garbage service had been satisfactory. Anderson testified that he maintained frequent contact with city hall to see if any complaints had been received and to notify the City when, for some reason, he was unable to service a customer as scheduled. On cross-examination, Curtis admitted that the City's subsequent operation of the garbage collection service had not been complaint-free, and that "anytime you're in the garbage business you get complaints. . . ." Anderson also showed that his landfill permit was still effective and that it had never been suspended or revoked.

Anderson testified that problems with the collection service in July of 1976 resulted from the breakdown of his new garbage compactor truck. While waiting for a new transmission, Anderson used his older equipment to make his rounds. He admitted that he may have been from a day to a day and a half behind schedule during the last three weeks in July, but denied that service had been suspended, or that he had failed to continue working to meet his schedule. According to Anderson he maintained his contact with city hall, keeping them informed when he was unable to meet his schedule.

On July 31, 1976, Curtis gave a letter addressed to Anderson to Anderson's brother-in-law, who was assisting Anderson with collections that weekend. The letter indicated that "[t]he contract that once existed between yourself and the City has expired the 31st day of July, 1974. The informal relationship that has been in existence since that time has been terminated by your declaration of intention to end your business." Since that date, the City of Palmer has collected garbage and refuse within the city limits. Anderson continues to operate outside the city limits. There was testimony at trial showing that Anderson cannot operate profitably without the City of Palmer's business.

Anderson filed suit on March 10, 1977. The jury found in his favor and awarded damages in the amount of $24,424. On appeal the City of Palmer argues that the trial court should not have instructed the jury that it could find that the City had waived its breach of contract defense against Anderson, that the evidence presented to prove the amount of damages was too speculative to support the jury's award, and that the trial court improperly denied the City's motions for a directed verdict and a new trial. We affirm.

Although neither party requested such an instruction, the trial court told the jury that it could find that the City had waived its defense of noncompliance with the contract by Anderson. The waiver instruction was given over timely and proper objection by the City. The City argues that the instruction should not have been given because Anderson failed to plead waiver in his complaint or to raise the issue during trial.

■ It is clear that Anderson had no duty to include the waiver theory in any of

his pleadings. Rule 8(a), Alaska Rules of Civil Procedure, requires only that a claim for relief contain a short, plain statement of the claim showing the plaintiff is entitled to relief. Anderson's complaint did so, alleging the existence of a contract, full performance, and breach by the City. It was not necessary for him to plead his responses to the defenses which might be raised by the City and, technically speaking, it would have been improper for him to do so.[1]

When the City answered the complaint with the affirmative defense of failure to perform under the contract, Anderson had no responsibility to reply. Rule 7(a), Alaska Rules of Civil Procedure, states in pertinent part:

*Pleadings.* There shall be a complaint and an answer; a reply to a counterclaim denominated as such . . . . No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

The rule clearly indicates that no reply is necessary to an affirmative defense unless ordered by the court. Under Rule 8(d), Alaska Rules of Civil Procedure, the plaintiff may raise at trial any defense or avoidance available to him notwithstanding his failure to respond to the defendant's answer.[2] Cases decided under the identical Fed.R.Civ.P. 7(a) and 8(d) hold that this includes affirmative defenses and matters in avoidance which would have to be pleaded if they were being raised in an answer to a complaint.[3] Having filed a proper complaint, Anderson was free to assert at trial any argument available to him in response to the affirmative defense raised by the City.

We also find that the waiver issue was sufficiently raised during trial. The entire course of the case implicitly suggested its relevance. Anderson presented evidence to show that a five-year contract existed and that he had performed his duties under the contract adequately. The City's case, on the other hand, consisted of a great deal of testimony to the effect that Anderson had not been performing satisfactorily under the contract for years before it was terminated. It was this evidence, introduced by the City itself, which made the waiver question an issue in the case. An instruction on the point should not have come as a surprise.

Moreover, it cannot be said that the City had no warning that a waiver instruction would be given. At the close of Anderson's case, the City moved for a directed verdict, arguing that Anderson's own case demonstrated his material breach of the contract because of his failure to meet schedules, his problems with his sanitary landfill operation, and his request for a rate increase. In denying the motion, the court expressly mentioned the waiver possibility.[4]

---

1. On occasion, a plaintiff's complaint will contain allegations that seek to avoid or defeat a potential affirmative defense; technically this is improper pleading because these allegations are not an integral part of plaintiff's claim.
5 Wright & Miller, Federal Practice and Procedure § 1276 (1969).

2. Rule 8(d), Alaska R.Civ.P., states in pertinent part:
Averments in a pleading to which no responsive pleading is required, or permitted shall be taken as denied or avoided.

3. *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213, 216 (8th Cir. 1951); *American Cutting Alloys, Inc. v. General Elec. Co.*, 135 F.2d 502, 504 (2d Cir. 1943); *Gulf Ref. Co. v. Fetschan*, 130 F.2d 129, 132 (6th Cir. 1942), *cert. denied*, 318 U.S. 765, 63 S.Ct. 666, 87 L.Ed. 1136 (1943); *Jordan v. Hartford Accident &*

*Indem. Co.*, 77 F.Supp. 817, 820 (W.D.Mo. 1948).

4. The court stated:
The defendant contends that the very fact of failing to pick up on time makes this matter one of strict liability upon plaintiff. I haven't found that to be so. The contract, of course, which has general outlines for the duties and responsibilities of both parties here, does not require by its own language strict accountability as to when, so that there may be deemed to, in the absence of any evidence to the contrary at this point—I can deem taking the inferences in favor of the plaintiff that there has been a waiver of some sort, either by inaction or by outright consent or acquiescence of the defendant in the matter of the delayed pickups.

The City argues that even if a waiver instruction was justified, the one that was given was an erroneous statement of the law. The most recent and complete discussion of the waiver doctrine took place in *Milne v. Anderson*, 576 P.2d 109 (Alaska 1978). There the court found that the defendant had, by his conduct, implicitly waived his right to protest changes in his contract with the plaintiff. The court defined waiver in the following terms:

> Waiver is generally defined as "the intentional relinquishment of a known right. . . ." However, waiver is:
>
> > "a flexible word, with no definite, and rigid meaning in the law . . . . While the term has various meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears, and each case must be decided on the facts peculiar to it."
>
> . . . A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. . . . To prove an implied waiver of legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel

by the party whose conduct is construed as a waiver.[5]

■ This statement of the law must be compared to the jury instruction actually given.[6] The City objects that the instruction did not adequately inform the jury that they must find any waiver to have been the result of an intentional relinquishment. However, the second sentence of the first paragraph does clearly say that "[w]aiver is the intentional or voluntary relinquishment of a known right." The City maintains that the subsequent language of the jury instruction negated this broad general definition by indicating that a simple failure to act, knowing or otherwise, would be sufficient. Under the circumstances of the case, however, we find no reason to reverse. Evidence produced by the City itself made it clear that the City was aware from 1973 through 1976 of certain shortcomings in Anderson's service which might literally be regarded as breaches of the contract.[7] This distinguishes the case from *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579 (Alaska 1976), relied upon by the City. In that case we upheld a finding that there had been no waiver of contract rights even though a breach had been occurring for several years, because the appellees had no knowledge of the rights they were alleged to have waived. Here, in contrast, since it is undisputed that the City knew of the problems, and of its rights

---

**5.** 576 P.2d at 112 *quoting United States v. Chichester*, 312 F.2d 275, 281–82 (9th Cir. 1963) (citations and footnote omitted). *See also Arctic Contractors, Inc. v. State*, 564 P.2d 30, 40 (Alaska 1977); *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 587 (Alaska 1976); *Alaska Foods, Inc. v. American Mfr's Mut. Ins. Co.*, 482 P.2d 842, 852 (Alaska 1971).

**6.** The instruction read:

> In the law of contracts there is a doctrine known as waiver. Waiver is the intentional or voluntary relinquishment of a known right. In this case where one party was required to meet certain conditions precedent and the other party had the right to rely and depend upon those conditions, if the first party failed to meet the conditions for whatever reason, and the second party took no affirmative action against the first party, or

the second party consented to the breach of the conditions there may be deemed a waiver on the part of the second party to the requirements to be met by the first party.

> Waiver may also be found and determined as the result of inaction or silent acquiescence on the part of the second party, if the breach of conditions are not affirmatively brought to the attention of the party not meeting the conditions.

> The law does not require each party to a contract to precisely perform the conditions they are required to meet. It is sufficient under the law if the parties to a contract substantially perform the same.

**7.** In fact the City had sent a letter to Anderson in 1975 warning that continued problems would jeopardize his contract, although it never took any further action.

under the contract, the jury could infer that the failure to do anything about them was "conduct . . . inconsistent with any other intention than a waiver."[8] The instructions reflected this. Although we do not endorse the instructions as a model on the waiver issue, they were adequate under the circumstances.

The City next argues that the damages award of $24,474 was based on evidence too speculative to be sustained. Anderson's proof of damages was based on his tax returns for 1973 through 1976 and on calculations made from those returns. Essentially, Anderson determined the percentage of his gross revenues that went to operating his business in 1975. He then applied this expenses-to-revenues ratio to the estimated gross income which would have been received from his collections in Palmer in 1976. This estimate was based on the eight months of actual revenues received in 1976 before the contract was terminated.[9] By these calculations, Anderson estimated that he would have earned a net income of $12,-128 from collections in the City of Palmer in 1976 if his business there had not been terminated. This figure was used to estimate net profits for each of the remaining two years of the contract. The City objects that the use of past expense and profit figures did not present an adequate picture of where Anderson's business was likely to stand in the future.

In order to recover lost profits in a breach of contract action, the plaintiff must present to the jury evidence sufficient to calculate the amount of the loss caused by the breach. The plaintiff need not prove the amount of damages with exact detail, but the evidence must be sufficient to provide a reasonable basis for the jury's determination.[10] In this case the exact profit Anderson would have made cannot be determined. But the law does not require absolute precision, it requires only a reasonable basis for the award. In *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684, 691 (1927) (citations omitted), the United States Supreme Court, quoting the court of appeals, held:

"The plaintiff had an established business, and the future profits could be shown by past experience. It was permissible to arrive at net profits by deducting from gross profits of an earlier period an estimated expense of doing business. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.

Applying the same principles to this case, we hold that the damages evidence was adequate to sustain the award.[11]

8. *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978).

9. Because the business was on a cash basis, Anderson was paid in August for the work he performed in July. His books thus reflect eight months of cash revenues from the City in 1976.

10. *Palmer v. Connecticut Ry. & Lighting Co.*, 311 U.S. 544, 561, 61 S.Ct. 379, 385, 85 L.Ed. 336, 343 (1940); *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U.S. 359, 379, 47 S.Ct. 400, 405, 71 L.Ed. 684, 691 (1927); *City of Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216, 222 (Alaska 1978); *Dowling Supply & Equip., Inc. v. City of Anchorage*, 490 P.2d 907,

909 (Alaska 1971); *Blanchard v. Makinster*, 137 Or. 58, 1 P.2d 583, 585 (1931).

11. *State v. Stanley*, 506 P.2d 1284 (Alaska 1973) does not require a different result. There we upheld the superior court's finding that damages as evidenced by the owner's income projections for the loss of use of a fishing boat which sank while in the possession of state officials were "too speculative to be of any particular value." *Id.* at 1294. However, the trial court did award loss of use damages in *Stanley* based on tax returns from prior years, and that award was not disturbed on appeal. The rejected damage claim in *Stanley* included estimated increases in earnings, estimated earnings from untried ventures and other ques-

At the close of Anderson's case-in-chief the City moved for a directed verdict pursuant to Rule 50(a), Alaska Rules of Civil Procedure.[12] The motion was denied. After the jury reached its verdict, the City moved for a new trial under Rule 59(a), Alaska Rules of Civil Procedure.[13] This motion was also denied. The City claims error.

 A motion for a directed verdict should be granted only when the evidence is such that fair-minded jurors, in the exercise of reasonable judgment, could not differ on the outcome.[14] The evidence must be viewed in the light most favorable to the non-moving party.[15] Similarly, the grant or denial of a motion for a new trial lies in the discretion of the trial court, and the reviewing court will not interfere with the trial judge's decision "except in the most exceptional circumstances and to prevent a miscarriage of justice."[16] Viewing the testimony presented by Anderson in the light most favorable to Anderson, we think there was clearly sufficient evidence to allow a jury to conclude that a five-year contract existed, and that the contract had been substantially performed. The City's case in response did little more than set up factual questions to be resolved by the jury. Having heard both sides, the jury made its decision and there are no grounds for saying that its resolution was plainly unreasonable or unjust. The trial court properly denied the motion for a directed verdict and the motion for a new trial.

AFFIRMED.

BOOCHEVER and BURKE, JJ., not participating.

tionable additions to income. In the present case, none of those factors went into the income computation. While there is some evidence that Anderson would incur increased expenses in the operation of the landfill, the amount of the increase is speculative, and the failure to include it in income computations does not warrant reversal in this case.

12. Rule 50(a), Alaska R.Civ.P., provides:
*Motion for Directed Verdict—When Made—Effect.* A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

13. Rule 59(a), Alaska R.Civ.P., provides in part: (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.

14. *Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 723 (Alaska 1975); *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974).

15. *Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 724 (Alaska 1975); *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 92 n. 12 (Alaska 1974); *City of Fairbanks v. Nesbett,* 432 P.2d 607, 609 (Alaska 1967); *Mallonee v. Finch,* 413 P.2d 159, 160 (Alaska 1966).

16. *City of Whittier v. Whittier Fuel & Marine Corp.,* 577 P.2d 216, 222 (Alaska 1978); *Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 723 (Alaska 1975); *Dowling Supply & Equip., Inc. v. City of Anchorage,* 490 P.2d 907, 909 (Alaska 1971); *Ahlstrom v. Cummings,* 388 P.2d 261, 262 (Alaska 1964).