Mary Anne ONDRUSEK and John
Ondrusek, Appellants,

v.

Robert MURPHY d/b/a Chilkoot
Horseback Adventures,
Appellee.

No. S–11196.

Supreme Court of Alaska.

Sept. 23, 2005.

Mark Clayton Choate, Choate Law Firm LCC, Juneau, for Appellants.

Paul D. Stockler, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

This case arises from an injury that occurred at Chilkoot Horseback Adventures on a day that it was closed for business. Travis Locke, an employee of Chilkoot, took his mother and stepfather, the Ondruseks, out for a horseback ride. Upon return, Locke's

mother got off her horse without assistance, but she fell and suffered a broken leg. The Ondruseks sued Robert Murphy d/b/a Chilkoot Horseback Adventures for negligence under a theory of respondeat superior. The superior court denied the Ondruseks' motion for summary judgment on this issue and the case went to trial. The jury returned a verdict in favor of Chilkoot. The Ondruseks now appeal arguing that respondeat superior liability is a question of law and not a question for the jury, and that no questions of material fact existed regarding the issue of respondeat superior liability.

Because genuine issues of material fact exist and conflicting inferences could be drawn concerning whether Locke was acting within the scope of his employment, we conclude that the superior court properly denied the motion for summary judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

Robert Murphy d/b/a Chilkoot Horseback Adventures (Chilkoot) in Skagway provides horseback rides and tours. Chilkoot operates mostly in the summer months, catering to out-of-state tourists and Alaska residents.

In May 2000 Chilkoot was open for business only on days that cruise ships were docked in Skagway. On days that business was closed, Chilkoot sometimes permitted trail guides to ride Chilkoot horses on their own time and occasionally allowed them to take friends and family out for free rides. During some business days, Chilkoot would offer free rides to cruise ship employees or friends and family if there were openings in a paying tour.

Chilkoot expected its guides to follow certain safety procedures whenever a non-employee rode a Chilkoot horse, whether business was open or closed. These procedures included a "Horse 101" safety lecture, directions on the proper method for dismounting a horse, instructions never to dismount without assistance from a guide, and several checks to see that the horses were properly saddled. When business was closed, Chilkoot did not require non-employees to sign the standard waiver form customers signed when business was open.

Chilkoot did not permit customers to drive their own vehicles onto Chilkoot property on days that business was open, whether they were paying or not. Instead, Chilkoot employees would pick everyone up at the cruise ship dock in Chilkoot vehicles and drive them to the property. When business was closed, Chilkoot did not permit guides to use Chilkoot vehicles, and thus non-paying customers would arrange their own transportation to Chilkoot.

In 1998 Chilkoot hired Travis Locke to work as a trail guide. Locke had been riding horses since he was a small child and rode competitively throughout his childhood, in college, and on the open circuit. In 2000 Locke considered himself the most experienced, able guide at Chilkoot.

On May 27, 2000, Mary Anne and John Ondrusek, Locke's mother and stepfather, were visiting Skagway on their way back to Texas. Because Chilkoot was not open for business and it was a nice day, Locke invited the Ondruseks on a free horseback ride. The three of them drove to Chilkoot in Mary Anne's vehicle. Several other people joined the free ride, including two other Chilkoot guides and two of Locke's friends who had never ridden before. Locke did not take the group on the full route used for paying tours that day, but turned back early because the Ondruseks appeared to be getting sore. When the group returned to Chilkoot, Mary Anne attempted to dismount her horse without assistance. While dismounting, Mary Anne fell and broke her leg.

Whether Chilkoot authorized the ride that day is disputed. Murphy testified that Locke did not ask permission for this particular ride and that he never met the Ondruseks. Locke testified that he told Murphy about the ride and that he did not recall Murphy prohibiting Locke from riding in the past. Additionally, Mary Anne testified that she met Murphy right before the ride and that he said "You all have a good time." Additionally, the parties are in disagreement regarding whether Locke gave a safety lecture before the ride, including instructing the group not to dismount without assistance.

Finally, there is a dispute about whether the ride that day was meant to benefit Chilkoot's business. Murphy testified that Chilkoot encouraged the guides to ride on days off because "the more time we ... put on our guide's back with the horses, the better." Locke, on the other hand, testified that riding the horses on days off did not benefit Chilkoot, but harmed the business because the horses needed the rest to stay healthy.

### B. Proceedings

The Ondruseks sued Chilkoot for negligence under a theory of respondeat superior. Chilkoot filed an answer denying that the free ride was business-related and denying that Locke was acting within the scope of his employment. Chilkoot admitted that Mary Anne fell when dismounting her horse and was injured, but denied all other allegations related to the cause of the injury.

The Ondruseks filed a motion for partial summary judgment requesting the trial court to find, as a matter of law, that Locke was acting within the scope of his employment at the time of Mary Anne's accident, and that Chilkoot was liable for Mary Anne's injuries under the doctrine of respondeat superior. Chilkoot filed an opposition to the motion,

arguing that material issues of fact existed. The superior court denied the motion, finding multiple issues of material fact relating to the doctrine of respondeat superior.

The case was then tried before a jury. At the close of trial, the court instructed the jury that if it determined that it was more likely than not Locke's conduct occurred within the scope of his employment, the jury could find Chilkoot liable. The court further instructed the jury to consider the factors stated in Restatement (Second) of Agency sections 228 and 229 when determining whether Locke was acting within the scope of his employment. The special verdict form first asked the jury to determine the scope of employment before addressing any other issues. Because the jury found that Locke was not acting within the scope of his employment, no other issues were reached.

### III. DISCUSSION

#### A. Standard of Review

■■■■ We review a superior court order denying summary judgment de novo.[1] We will affirm the superior court's denial of summary judgment if a genuine issue of material fact exists or the moving party was not entitled to judgment as a matter of law.[2] "A

1. *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004).

2. *Id.* Chilkoot does not argue that the denial of the motion for summary judgment may not be considered as a point on appeal given that this case was subsequently resolved by a trial on the merits. Such an argument would be favorably received in the federal courts, and in many state jurisdictions. *See Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994); *Black v. J.I. Case Co.*, 22 F.3d 568, 570–72 (5th Cir.1994), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 276–78 (7th Cir.1994); *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir.1994); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250–51 (10th Cir.1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir.1990); *Holley v. Northrop*, 835 F.2d 1375, 1377–78 (11th Cir.1988); *Locricchio v. Legal Serv. Corp.*, 833 F.2d 1352, 1358–59 (9th Cir.1987); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573–74 (Fed.Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124; *Fleitz v. Van Westrienen*, 114 Ariz. 246, 560 P.2d 430, 432–33 (App.1977) (finding that a denial of summary judgment is not appeal-able, but recognizing a narrow exception if the denial was made on a point of law and prevented the losing party from offering evidence or urging the point at the time of trial); *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114, 1117 (Colo.1981) ("To hold otherwise could lead to the absurd result that one who has sustained his position after a full trial and a more complete presentation of the evidence might nevertheless be reversed on appeal because he had failed to prove his case fully at the time of the hearing on the motion for summary judgment."); *Phillips v. Abel*, 141 Ga.App. 291, 233 S.E.2d 384 (1977) (finding the issue is moot after the evidence has been reviewed in a trial on the merits); *Evans v. Jensen*, 103 Idaho 937, 655 P.2d 454, 459 (App. 1982) (explaining that a final judgment after trial should be tested upon the record made at trial not at the time summary judgment was denied); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (explaining that after a full trial on the merits the denial of summary judgment merges with the trial); *Skowronski v. Sachs*, 62 Mass. App.Ct. 630, 818 N.E.2d 635, 638 n. 5 (2004) (explaining that no right to review exists when case has proceeded to trial on the merits, unless summary judgment issue was on a different claim than was tried); *Cannon v. Day*, 165

material issue of fact exists where reasonable jurors could disagree on the resolution of a factual issue." [3] Facts are to be viewed in the light most favorable to the nonmoving party.[4]

### B. The Superior Court Did Not Err in Denying the Motion for Summary Judgment on the Issue of Respondeat Superior Because Genuine Issues of Material Fact Exist.

■ The Ondruseks assert that this court analyzes respondeat superior liability under the Restatement (Second) of Agency section 228 (hereinafter Restatement). The Ondruseks argue that the superior court should have granted summary judgment on the question of respondeat superior liability because no issues of material fact existed concerning whether Locke was acting within the scope of his employment under the factors set forth in section 228. Section 228 states in full:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

The Ondruseks argue that (1) the first factor is satisfied because Chilkoot employed Locke to take people on trail rides, and this case arose from such a ride; (2) the second factor is met because Murphy authorized Locke to take his mother on a trail ride and the ride occurred on Chilkoot riding trails; and (3) the third factor is satisfied because the ride benefitted Chilkoot's business by providing the guides with experience. The Ondruseks contend that the above facts are all undisputed and thus Locke was acting within the scope of his employment as a matter of law.

Chilkoot responds that this court does not strictly adhere to the requirements in Restatement section 228, but also considers whether the conduct is "of the same general nature as that authorized, or incidental to the conduct authorized" considering the factors set forth in section 229.[5] Chilkoot asserts

---

N.C.App. 302, 598 S.E.2d 207, 210 (2004) ("Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts...."); *All–States Leasing Co. v. Pacific Empire Land Corp.*, 31 Or.App. 733, 571 P.2d 192 (1977). *But cf. Lackner v. LaCroix*, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393, 396 (1979); *Wynn v. Winsen, Ltd.*, 246 So.2d 639, 640 (Fla.Dist.App.1971); *Metro Mach. Corp. v. Mizenko*, 244 Va. 78, 419 S.E.2d 632, 634 (1992); *Lane v. Schacht*, 260 Pa.Super. 68, 393 A.2d 1015, 1018 (1978).

This court, however, has reviewed summary judgment denials. *Diamond v. Wagstaff*, 873 P.2d 1286, 1289–90 (Alaska 1994); *Cameron v. Beard*, 864 P.2d 538, 545–46 (Alaska 1993); *Western Pioneer, Inc. v. Harbor Enters.*, 818 P.2d 654 (Alaska 1991). In one case, *Western Pioneer*, we reversed a judgment entered on a jury verdict on the basis that summary judgment should have been entered in favor of the party that lost at trial. But the issue involved was a question of law that had been improperly resolved at summary judgment and the resolution affected the trial. Often summary judgment motions are de-

nied on the basis that there are genuine issues of material fact. At least as to motions denied on that basis, this court will give serious consideration in the future to adoption of what seems to be the majority view concerning reviewability of summary judgment denials, when the point is properly raised.

3. *McGee Steel Co. v. State ex rel. McDonald Indus. Alaska, Inc.*, 723 P.2d 611, 614 (Alaska 1986).

4. *Samaniego*, 83 P.3d at 1082.

5. RESTATEMENT (SECOND) OF AGENCY § 229 (1958). This section states in pertinent part:

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

(c) the previous relations between the master and the servant;

that questions such as whether the conduct is "too little actuated by a purpose to serve the master"[6] are inherently fact specific and should be left for the jury. Chilkoot argues that even if the facts are undisputed, scope of employment is still a question for the jury because reasonable jurors could draw conflicting inferences.

Additionally, Chilkoot disagrees with the Ondruseks' assertion that the facts are undisputed. Chilkoot points to Locke's testimony that the free rides did not benefit Chilkoot because the horses needed rest on days when Chilkoot was closed for business, and Locke's testimony that the Ondruseks were not paying for the ride and the rides were not expected to bring in future business. Chilkoot argues that under these facts a reasonable jury could conclude that Locke's conduct was "too little actuated by a purpose to serve" Chilkoot, and thus could find that Locke was not acting within the scope of his employment.

Chilkoot asserts that Locke's conduct was not the type Chilkoot employed him to perform because the ride was free, Locke was not being paid, Chilkoot was closed, no waivers were signed, and the route differed from the one used during actual tours. Additionally, Chilkoot argues that a dispute exists regarding "the extent of departure from the normal method of accomplishing an authorized result,"[7] pointing out that the parties

disagree about whether the employees followed standard Chilkoot procedures, such as giving a safety lecture, giving the dismount warning, and checking the saddles. Finally, Chilkoot asserts that the facts are in dispute regarding whether Chilkoot guides commonly give this type of ride[8] because Locke testified it is "pretty rare" for guides to take people on free rides on days that Chilkoot is closed.

 Under the doctrine of respondeat superior an employer may be liable for the conduct of its employees if the conduct occurred within the scope of their employment.[9] We have adopted a flexible analysis for the determination of scope of employment, guided by the factors stated in the Restatement sections 228 and 229.[10]

 We have held that the scope of employment is a fact specific inquiry for the jury unless the facts are undisputed or lend themselves to only one conclusion.[11] In *Luth v. Rogers & Babler Construction Co.,* the tort at issue occurred during the employee's twenty-five-mile commute between his home and his jobsite, where he worked as a construction flagman.[12] We held that, although the facts were undisputed, the jury could have drawn conflicting inferences about whether this conduct was within the scope of employment.[13] In *Fruit v. Schreiner,* the employee was involved in an

---

(d) the extent to which the business of the master is apportioned between different servants;

(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

(f) whether or not the master has reason to expect that such an act will be done;

(g) the similarity in quality of the act done to the act authorized;

(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i) the extent of departure from the normal method of accomplishing an authorized result; and

(j) whether or not the act is seriously criminal.

6. RESTATEMENT § 228(2).

7. RESTATEMENT § 229(2)(i).

8. *See id.* § 229(2)(a).

9. *Doe v. Samaritan Counseling Ctr.,* 791 P.2d 344, 346 (Alaska 1990).

10. *Taranto v. North Slope Borough,* 909 P.2d 354, 358 (Alaska 1996) (citing *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 764–65 n. 14 (Alaska 1973)).

11. *Taranto,* 909 P.2d at 359 ("[S]cope of employment is a fact-specific issue requiring case-by-case determination."); *Luth,* 507 P.2d at 764 ("[S]cope of employment questions are jury issues where conflicting inferences can be drawn from undisputed facts."); *Fruit v. Schreiner,* 502 P.2d 133, 140–41 (Alaska 1972) (noting "[a]pplicability of respondeat superior will depend primarily on the findings of fact in each case" and that "the factual determination generally is left to the jury").

12. 507 P.2d at 762.

13. *Id.* at 765.

accident during an annual convention hosted by his employer at an out-of-town resort.[14] The accident occurred early in the morning when the employee was returning to the resort after failing to find the rest of his group at a restaurant and bar.[15] We held that, because some evidence supported a finding that the conduct arose out of the employee's motivation to serve the employer by socializing to learn from out-of-state attendees' work experiences, a reasonable jury could draw conflicting conclusions about whether the accident took place within the scope of employment.[16]

Here, material issues of fact exist regarding scope of employment and thus denial of the summary judgment motion was appropriate. Also, construing the facts in favor of Chilkoot, we cannot conclude that Locke was acting within the scope of his employment as a matter of law. The facts are disputed regarding whether Chilkoot authorized the ride on May 27, 2000.[17] Murphy testified that Locke did not tell him about the ride and that he never met the Ondruseks. Locke, however, testified that he "might have mentioned it" to Murphy. And Mary Anne testified that she met Murphy right before the horseback ride.

The facts are also disputed as to whether the ride benefitted Chilkoot's business.[18] Murphy testified that the more the guides rode the better it was for business because the guides would gain experience. Murphy also testified, however, that his biggest concern regarding the free rides was that the horses had enough rest. And he also was concerned that the guides riding on days off had adequate experience. He was less inclined to allow inexperienced guides to ride when business was closed. This is contrary to the idea that free rides for friends and family always benefit Chilkoot by giving the guides more experience. Additionally, Locke testified that he thought riding horses on days off did not benefit Chilkoot, but harmed the business because the horses did not get adequate rest.

The Ondruseks argue that the trial court should not have considered Locke's opinion testimony in denying summary judgment. Chilkoot responds that Locke's testimony contained issues of material fact and that Locke's opinion testimony is equal in weight to Murphy's opinion testimony because on a motion for summary judgment the court does not weigh testimony or make credibility determinations. Additionally, Chilkoot argues that lay opinion testimony is admissible if it is rationally based on the perception of the witness and it aids in the determination of a factual issue. The Ondruseks reply that Locke's opinion cannot dispute Murphy's opinion because Murphy, as the sole owner of Chilkoot, is the only person who can make a factual statement about whether the business is benefitted.

Evidence of an employee's motivation to benefit the business is a relevant consideration when determining the scope of employment. Whether an employee's conduct benefitted the employer is determined from the perspective of the employee, not the desire of the employer.[19] In *Fruit*, for instance, we relied on the existence of evidence "that [the employee] was at least motivated in part by *his* desire to ... improve his abilities as a salesman," in finding that material issues of fact existed regarding whether he was acting within the scope of his employment.[20] In *VECO, Inc. v. Rosebrock*, we clarified the "motivation to serve" test stating that imposing "liability under a scope of employment theory absent at least a partial purpose on the part of the employee to serve the employer seems unjustified."[21]

---

14. 502 P.2d at 135.

15. *Id.*

16. *Id.* at 142.

17. Whether or not Chilkoot authorized the conduct is a factor to be considered under Restatement § 228(1)(b).

18. *See* Restatement § 228(1)(c).

19. *See VECO, Inc. v. Rosebrock*, 970 P.2d 906, 924 n. 36 (Alaska 1999); *Doe,* 791 P.2d at 346; *Fruit,* 502 P.2d at 142.

20. 502 P.2d at 142 (emphasis added).

21. 970 P.2d at 924 n. 36.

Here, the trial court did not err in considering Locke's testimony regarding the motivation for his actions. Locke testified that he had no desire to benefit the business by taking his mother out on a free ride. In fact, Locke thought that riding the horses on days Chilkoot was closed was harmful to the business. This testimony was relevant to the issue whether Locke was acting within the scope of his employment.

## IV. CONCLUSION

For the above reasons, we conclude that the Ondruseks' motion for summary judgment was properly denied. The final judgment entered by the court based on the jury verdict is therefore AFFIRMED.