**Richard Steve HELFRICH, Appellant,**

v.

**VALDEZ MOTEL CORPORATION, Appellee.**

No. S–12776.

Supreme Court of Alaska.

May 22, 2009.

Tim Cook, Cook & Associates, Anchorage, and Paul H. Bratton, Law Offices of Paul H. Bratton, Talkeetna, for Appellant.

Paul D. Stockler, Law Office of Paul D. Stockler, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The main issue in this appeal is whether a landlord violates the anti-retaliation statute, AS 34.03.310(a)(2), of the Uniform Residential Landlord and Tenant Act (URLTA) by evicting a tenant who demands personal injury compensation following an on-premises slip and fall. The superior court held that it does not, and therefore granted a directed verdict to the landlord on the tenant's URLTA retaliation claim. Because a claim for personal injury damages resulting from an on-premises fall is not for "rights and remedies granted" under URLTA,[1] we affirm.

## II. FACTS AND PROCEEDINGS

Richard Steve Helfrich was employed by the Valdez Motel Corporation to perform general repairs and maintenance for one of its properties, the Pipeline Inn.[2] Helfrich rented a room at the Inn on a month-to-month basis at a reduced employee rate.

After finishing work on March 21, 2005, and while walking in an area behind the Inn, Helfrich slipped, fell, and broke his leg. Helfrich spent four or five days in hospitals in Valdez and Anchorage, returning to the Inn on March 24 or 25. He continued to reside at the Inn through May 2005. Helfrich was initially unable to work, but at some point he resumed working for the Inn on a part-time basis.

Helfrich asserts on appeal, and Valdez Motel does not dispute, that he did not have health insurance or other means to pay his medical bills. Mark Lee (Lee) and James "Bill" Lee are shareholders of the Valdez Motel Corporation. Helfrich testified in his deposition that he spoke with Bill Lee after returning from the hospital about how he "needed help with [his] medical bills." Helfrich testified that the Lees never responded whether they were willing to help. Mark

---

1. AS 34.03.310(a)(2).

2. Because the superior court resolved the issues raised in this appeal on summary judgment and directed verdict, the superior court did not make factual findings. Our fact description relies on the superior court record, including exhibits, de-

positions taken after Helfrich filed his complaint, and transcripts of the relevant trial proceedings. In describing the facts, we take permissible inferences in favor of the nonmovant. We are not finding facts or resolving factual disputes.

Lee testified in his deposition that he paid for Helfrich's medicine and some of his trips to the doctor, and ensured that Helfrich had transportation to his medical appointments. Lee testified that he asked Helfrich whether he was "going to seek an attorney" and that Helfrich said he was not. Helfrich testified that he consulted attorney Tim Cook after he never heard back from the Lees about whether they would cover his medical expenses.

On May 26, 2005, Cook sent Mark Lee a demand letter on Helfrich's behalf, asserting that Valdez Motel was liable for "in excess of $40,000" in medical bills that Helfrich had incurred. Cook's letter asked the Lees to seek coverage with their insurance provider and concluded that it would be in Pipeline Inn's best interest "to accept responsibility and provide for [Helfrich's] care and settle this matter as expediently as possible." On June 1, 2005, Cook spoke with Mark Lee by telephone. Lee told Cook that Helfrich could continue to stay at the Inn, but that he could no longer stay at the reduced rental rate.[3]

Helfrich testified in his deposition that, on the same day Cook called Lee, Lee and Helfrich had a conversation in the hallway of the Inn. Helfrich testified that Lee told Helfrich that he wanted Helfrich off the premises as soon as possible and that he did not like getting threatening letters from attorneys. Helfrich testified that after the conversation he found a letter posted on the door to his room. The letter stated:

June 1, 2005

Steve,

I guess we should have learned from the past and had nothing to do with you, but that's not how we do things. Unfortunately, it has come back and bit us in the ass again and for that I thank you. I really don't appreciate getting a threatening letter from an attorney. I think at this[ ] point Steve, it is best you move out as fast as you can. I recommend perhaps moving in with whoever gave you such back stab-

bing advice. If no one, I guess it is time for a tent (on someone else's property). Mark

Helfrich testified that he packed his things and left the Inn within ten minutes of receiving the letter. He testified that he never approached Lee to ask if he could stay in his room either for the night or until he could make other living arrangements.

Cook wrote Lee a letter on June 2, 2005 confirming their June 1, 2005 conversation and urging Lee not to raise Helfrich's rent because it would likely render Helfrich homeless. Lee testified that at some point after Helfrich received Lee's letter and left the premises, Lee told Helfrich that he could stay if he paid increased rent. Lee testified in his deposition that he decided to raise the rent because Helfrich was no longer an employee. Lee testified that Helfrich was "let go" for lying about hiring an attorney and because he suspected that Helfrich was also lying about whether his fall was actually on Valdez Motel's property.

On June 8, 2005, Helfrich sued Valdez Motel in superior court, asserting both claims of negligence and claims of violations of URLTA.[4] In August 2006 Helfrich sought partial summary judgment on the alleged URLTA violations. Helfrich argued that Valdez Motel unlawfully failed to provide him with a written eviction notice that met URLTA's notice requirements.

The superior court denied Helfrich's motion for partial summary judgment in early December 2006. The court also denied Helfrich's subsequent motion for reconsideration. The court clarified that a factual dispute barring judgment as a matter of law existed about the "nature of the purported June 1, 2005 eviction notice."

A three-day jury trial took place in May 2007. At the close of Helfrich's case, Valdez Motel moved for a directed verdict on Helfrich's claims. The court denied Valdez Motel's directed verdict motion on the negligence claim, but granted Valdez Motel a

---

**3.** The amount of the resulting rent increase is unclear from the record. The new total appears to have been either $900 per month or $106 per day.

**4.** AS 34.03.010 et seq.

directed verdict on the URLTA and punitive damages claims. Helfrich had advanced two URLTA claims: (1) that the eviction was in retaliation for seeking remedies under URLTA, and (2) that the eviction was a wrongful ouster. Only Helfrich's negligence claim was submitted to the jury, which returned a verdict finding that Valdez Motel was not liable. The court later entered final judgment for Valdez Motel and awarded it Alaska Civil Rule 82 attorney's fees of $13,081.83.

Helfrich appeals the denial of his motion for partial summary judgment and the grant of Valdez Motel's motion for directed verdict on the URLTA claims. He does not appeal the grant of directed verdict on his punitive damages claim. He also asks us to reverse the attorney's fees award that Valdez Motel received as the prevailing party.

## III. DISCUSSION

### A. Standard of Review

■ We review a denial of summary judgment de novo, affirming only if a genuine issue of material fact exists or the moving party was not entitled to judgment as a matter of law.[5]

■ We view facts in the light most favorable to the nonmoving party.[6]

■ We review a grant of directed verdict de novo, affirming only if reasonable jurors could not reach a different conclusion.[7] We view the evidence in the light most favorable to the nonmoving party.[8]

### B. Helfrich's Motion for Partial Summary Judgment

■ Helfrich asks us to reverse the superior court's denial of his motion for partial summary judgment. He argues that the letter Lee posted on Helfrich's door on June 1, 2005 failed to satisfy the minimum provisions of URLTA[9] and the forcible entry and detainer (FED) statutes regarding notices to quit. Helfrich implicitly contends that there was no genuine issue of material fact regarding whether the notice was a notice to quit governed by URLTA and the FED statutes, that it failed to satisfy the requirements of those statutes as a matter of law, and that he therefore was entitled to prevail as a matter of law on those claims. He asks that we remand to the superior court for determination of actual damages and award of costs and attorney's fees.

URLTA was adopted in Alaska to govern landlord-tenant disputes.[10] We have held that URLTA should be harmonized with the FED statutes, which govern evictions.[11]

Generally, a landlord may not evict a tenant under the FED statutes unless the landlord first gives the tenant a "notice to quit,"[12] otherwise known as an eviction notice. A notice to quit is a written demand for the tenant to vacate and surrender the property, thereby terminating the tenancy.[13] The notice to quit must meet certain requirements. It must be in writing and must be delivered to the tenant, left at the premises,

---

5. *Ondrusek v. Murphy*, 120 P.3d 1053, 1055 (Alaska 2005) (citing *City of Kodiak v. Samaniego*, 83 P.3d 1077, 1082 (Alaska 2004)) (affirming denial of summary judgment on negligence claim because genuine issue of material fact existed).

6. *Id.* at 1056.

7. *D.P. v. Wrangell Gen. Hosp.*, 5 P.3d 225, 228 (Alaska 2000) (citing *Fairbanks N. Star Borough v. Lakeview Enters., Inc.*, 897 P.2d 47, 53 n. 5 (Alaska 1995)) (reversing grant of directed verdict in favor of hospital in medical malpractice action).

8. *Id.*

9. As a preliminary matter, it is unclear whether URLTA applies to this case. AS 34.03.330(b)

exempts from URLTA's requirements "(4) transient occupancy in a hotel, motel, lodgings, or other transient facility" and "(5) occupancy by an employee of a landlord whose right to occupancy is conditioned upon employment substantially for services, maintenance, or repair to the premises." Neither party argues here that URLTA does not apply, and we therefore assume that it does. We express no opinion as to whether the exceptions would apply in this case.

10. AS 34.03.010.

11. AS 09.45.060–.160; *McCall v. Fickes*, 556 P.2d 535, 539 (Alaska 1976).

12. AS 09.45.100(a).

13. Black's Law Dictionary 1093 (8th ed. 2004).

or sent by registered or certified mail.[14] The notice must tell the tenant why the landlord is terminating the tenancy, what the tenant may do to avoid termination if the breach or violation may be corrected, and the date and time of termination under the lease or rental agreement.[15] The notice must direct the tenant to quit no later than the termination date under the lease or rental agreement.[16] And the notice must notify the tenant that if the tenant remains in occupation after termination "the landlord may commence a civil action to remove the tenant . . . and recover possession." [17]

URLTA also requires the landlord to give written notice of intent to terminate a tenancy.[18] A landlord may terminate any tenancy if rent is unpaid when due and remains unpaid for seven days after the landlord provides the tenant with written notice that rent is due and that the landlord intends to terminate if the rent is not paid within that time.[19] A landlord or tenant may also "terminate a month to month tenancy by a written notice given to the other at least 30 days before the rental due date specified in the notice." [20]

■■ The parties disagreed in the superior court whether there was a genuine dispute of material fact about whether the letter Lee posted on Helfrich's door was an eviction notice, and, accordingly, disagreed whether the letter had to satisfy the FED and URLTA notice requirements. Valdez Motel appeared to concede that, if the letter was found to be an eviction notice, it would be defective under URLTA as a matter of law. Helfrich argued that there was no dispute that the letter was an eviction notice because it demanded that he "move out as fast as you can," and because Lee desired that Helfrich comply with that demand.[21] Valdez Motel responded that the letter was not an eviction notice, but an expression of Lee's thought or opinion that it would be best, given the "existing animosity between the parties," for Helfrich to move out. It argued that Helfrich took the statement "move out as fast as you can" out of context in characterizing it as an "unequivocal demand." In support of its arguments, Valdez Motel noted that the sentence read in full: "I think at this point, Steve, it is best you move out as fast as you can."

The superior court denied Helfrich's motion for partial summary judgment and his motion for reconsideration. In denying Helfrich's motion for reconsideration, the superior court stated that there was "a factual dispute as to the nature of the purported

14. AS 09.45.100(c).

15. AS 09.45.105(1).

16. AS 09.45.105(2).

17. AS 09.45.105(3).

18. AS 34.03.220(b), .290(b).

19. AS 34.03.220(b).

20. AS 34.03.290(b).

21. Helfrich's brief on appeal raises for the first time an argument based on Valdez Motel's response to one of his requests for admission. In "Request for Admission Number 28," Helfrich stated, "Please admit that [Lee's letter] was intended to be a notice of eviction." Valdez Motel responded, "Admit." The superior court has a "duty to go 'outside the pleadings to consider the entire setting of the case *to the extent that the material was brought to the court's attention by the parties on the motion.'*" *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 582 (Alaska 2007) (quoting *Jennings v. State*, 566 P.2d 1304, 1310 (Alaska 1977)) (emphasis added).

The superior court denied Helfrich's motion for partial summary judgment on December 4, 2006 and denied his motion for reconsideration on January 10, 2007. The trial began on May 14, 2007. It appears that Helfrich did not file the admission with the superior court or otherwise bring it to the court's attention before it was admitted as an exhibit at trial. Although Helfrich attached other exhibits to his motion for partial summary judgment, he did not attach the admission to that motion or to his motion for reconsideration. Nor did Helfrich mention the admission in either motion or his reply to Valdez Motel's summary judgment opposition. Helfrich does not appear to have renewed his motion for partial summary judgment at any point after the admission was filed with the court. Because Helfrich did not bring the admission to the court's attention when he moved for summary judgment or before the court denied the motion, we do not consider this argument on appeal.

Even if the admission had been submitted before the court ruled, it would not have compelled a grant of Helfrich's summary judgment motion given our conclusion below that the superior court did not err in concluding that there was a factual dispute about the nature of the notice.

June 1, 2005 eviction notice, such that entry of judgment as a matter of law was not appropriate."

█ We agree with the superior court's assessment and affirm the denial of summary judgment. Although a trier of fact might have concluded that the letter was an eviction notice, the letter's words and Lee's relevant deposition testimony [22] create a genuine issue of material fact as to whether the letter was an eviction notice that fell within the ambit of URLTA and the FED statutes. The trial court therefore properly denied summary judgment to Helfrich on this issue.[23]

### C. Valdez Motel's Directed Verdict on Helfrich's URLTA Retaliation Claims

Helfrich argues that Valdez Motel violated URLTA's anti-retaliation provision and that the superior court therefore erred in granting Valdez Motel's motion for directed verdict on his URLTA retaliation claim.

Alaska Statute 34.03.310(a) prohibits a landlord from retaliating against a tenant "by

22. Lee testified that as a friend he did not wish to see Helfrich again and that as a landlord he "probably would have preferred that [Helfrich] would have moved out." In response to Cook's question whether the letter was "tantamount to an eviction notice," Lee responded that "[i]n my mind it was a note from—you know, more of a friend's reaction than it was an employee/employer reaction."

23. Helfrich asks us to grant him summary judgment and remand for determination of actual damages for FED and URLTA violations. In his amended complaint, Helfrich alleged that the failure to comply with FED and URLTA's mandatory eviction procedures was an unfair practice under the Alaska Unfair Practices and Consumer Protection Act, AS 45.50.471–.561. But Cook waived the unfair practices claim at trial, and did not assert any other claims for damages based on deficiencies in the alleged notice to quit. Although Helfrich argues on appeal that the alleged notice to quit violates URLTA and FED as a matter of law, he does not specify how he was damaged by the alleged deficiencies. He also does not argue in the alternative that we remand for determination as a matter of fact whether the alleged notice was actually an eviction notice and, therefore, whether Helfrich suffered damages based on the alleged deficiencies. Any claim of damages resulting from deficiencies in the alleged notice is therefore waived.

increasing rent or decreasing services or by bringing or threatening to bring an action for possession *after the tenant has ... (2) sought to enforce rights and remedies granted the tenant under this chapter.*" [24] Whether Helfrich's eviction violated the anti-retaliation statute depends on whether his lawyer's May 26, 2005 demand letter was an attempt to "enforce rights and remedies granted the tenant under [URLTA]." [25]

URLTA requires that landlords maintain fit premises.[26] Maintaining fit premises includes making all repairs and keeping the premises in a fit and habitable condition;[27] keeping common areas clean and safe;[28] keeping the electric, plumbing, heating, and like systems in good and safe working order and condition;[29] providing appropriate trash receptacles;[30] providing essential services such as running water, hot water, and heat;[31] providing locks and keys when requested by the tenant;[32] and providing smoke and carbon monoxide detectors.[33] Tenants' remedies for landlords' noncompliance with AS 34.03.100(a) include terminating the tenancy and suing for damages or injunctive relief.[34]

24. AS 34.03.310(a)(2) (emphasis added). "[T]his chapter" refers to Chapter 03, the Uniform Residential Landlord and Tenant Act. URLTA also protects other types of tenant conduct from retaliation by landlords, AS 34.03.310(a), but enforcement of rights and remedies granted under URLTA is the only type of tenant conduct at issue in this case.

25. AS 34.03.310(a)(2).

26. AS 34.03.100(a).

27. AS 34.03.100(a)(1).

28. AS 34.03.100(a)(2).

29. AS 34.03.100(a)(3).

30. AS 34.03.100(a)(4).

31. AS 34.03.100(a)(5).

32. AS 34.03.100(a)(6).

33. AS 34.03.100(a)(7).

34. AS 34.03.160(a) & (b). That provision states "(b) Except as provided in this chapter, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord

Helfrich essentially argues that his personal injury lawsuit asserts the right to safe common areas granted him by AS 34.03.100(a)(2) through the remedy of damages granted him by AS 34.03.160(b). He contends that either threatening to file or filing a lawsuit is therefore conduct protected from retaliation by AS 34.03.310(a)(2). Valdez Motel appears to respond that the right to be free of the landlord's negligence and the remedy of personal injury damages are granted not by URLTA, but by the state's general tort law, and that because Helfrich was not enforcing rights and remedies granted by URLTA, his conduct was not protected from retaliation by AS 34.03.310(a)(2).

We have said that the public policy behind AS 34.03.310 is to encourage tenants to "assert their rights under their leases and under the law." [35] But we have not determined the scope of conduct the statute protects.

█ We have emphasized that Alaska's adoption of URLTA "accord[ed] tenants previously unrecognized rights by recognizing the contractual nature of the landlord-tenant relationship." [36] URLTA grants the tenant a right to require the landlord to "maintain fit premises" [37] and provides a remedy for damages if the landlord fails to do so.[38] But URLTA does not expressly grant the tenant a right to be free from the landlord's negligence or a remedy to recover consequential damages for personal injuries resulting from such negligence if fitness and habitability are not in issue. Nor does it do so implicitly.

Alaska's tort law, not URLTA, confers this right and this remedy.

█ We conclude that tenants' personal injury claims seeking recovery for injuries resulting from landlords' alleged negligence do not "[seek] to enforce rights and remedies granted the tenant under [URLTA]." [39] Alaska Statute 34.03.310(a)(2) therefore does not protect tenants from eviction if they threaten or file personal injury lawsuits.

█ There may be good policy reasons supporting a broader interpretation of subsection .310(a)(2). Tenants who file personal injury lawsuits seek damages for injuries resulting from past conditions, not for ongoing noncompliance with URLTA's duty to maintain premises safe and fit for habitation. Nonetheless, personal injury lawsuits or claims may motivate landlords to comply with URLTA—by maintaining safe premises—to avoid future litigation or even to mitigate dangerous conditions identified in the claim or lawsuit. Moreover, URLTA's anti-retaliation provision reflects our policy of encouraging tenants to "assert their rights under their leases and under the law." [40] Lawsuits under URLTA and lawsuits under state tort law both further that policy. Tenants who have not yet been injured are protected from retaliation if they threaten to sue or sue for rent abatement under AS 34.03.160(b) for landlords' ongoing noncompliance with URLTA's duty to maintain the premises. But tenants who have been injured and who choose to sue under tort law instead of URLTA also "assert their rights

with the rental agreement or AS 34.03.100, 34.03.210, or 34.03.280."

Tenants have additional URLTA remedies for violations of URLTA rights not implicated in this case. For example, if a landlord fails to deliver possession, a tenant is entitled to rent abatement, may terminate the tenancy, and may maintain an action for possession. AS 34.03.170. If a landlord wrongfully fails to supply heat, water, hot water, or essential services, a tenant may deduct from the rent reasonable cost of replacement services, diminution in fair rental value, and substitute housing if necessary. AS 34.03.180. In case of fire or casualty damage, a tenant may terminate the tenancy or deduct from the rent for diminution in fair rental value. AS 34.03.200. And if a landlord wrongfully ousts, excludes, or diminishes services, a tenant may terminate the tenancy or recover possession and sue for up to

one and a half times actual damages. AS 34.03.210.

**35.** *Vinson v. Hamilton,* 854 P.2d 733, 736 (Alaska 1993) (holding litigant was entitled to continuance to prepare defense of retaliatory eviction because even month-to-month tenants may raise this defense).

**36.** *McCall v. Fickes,* 556 P.2d 535, 537–38 (Alaska 1976).

**37.** AS 34.03.100.

**38.** AS 34.03.160(b).

**39.** AS 34.03.310(a)(2).

**40.** *Vinson,* 854 P.2d at 736.

under their leases and under the law." [41] As a matter of policy, those tenants are no less worthy of protection from retaliation.

Despite these considerations, we conclude that a narrower reading is more consistent with the text and structure of AS 34.03.310(a)(2). That subsection's plain text protects from retaliation only a tenant's actions to enforce rights and remedies under URLTA. URLTA's remedy for breach of the landlord's statutory duties under AS 34.03.100(a) and the common law tort remedy for personal injury damages are not the same. Other states have enacted versions of URLTA with broader protections. Oregon's statute prohibits retaliation against any tenant who "has performed or expressed intent to perform any other act for the purpose of asserting, protecting or invoking the protection of any right secured to tenants under any federal, state or local law." [42] The Alaska legislature could have adopted a similar protection but did not. We will not second guess that determination.

Our analysis is confirmed by our review of statutory schemes elsewhere. Several other states adopting URLTA have also adopted provisions similar to AS 34.03.310(a)(2). [43] But none appears to have decided whether seeking compensation for personal injuries sustained as a result of a prior dangerous condition on the premises is protected conduct under the retaliatory eviction provision. New York's anti-retaliation statute, which is not based on URLTA, resembles AS 34.03.310 in specifying that tenant actions must vindicate legal rights protected by landlord-tenant laws to be protected from retaliation. [44] A New York municipal court has held that this statute protects from retaliation only conduct related to tenants' contract actions to enforce rights related to the warranty of habitability, not tort actions seeking compensation for personal injury. [45] New York's landlord-tenant law requires the landlord to keep the premises safe and fit for human habitation and entitles the tenant to damages for breach of this duty. [46] In *Pezzolanella v. Galloway,* a tenant threatened to sue in tort for damages after her child was injured when her kitchen ceiling collapsed. [47] The tenant alleged that her landlord breached his duty under the landlord-tenant law to keep the premises safe and fit for human habitation. [48] The landlord subsequently commenced a summary eviction proceeding in which the tenant raised retaliation as an affirmative defense. [49] The court rejected the tenant's argument that the lawsuit was an action to secure her rights under housing laws. [50] It therefore held that threatening to file the lawsuit was not conduct protected from retaliation and that the landlord did not violate the statute by evicting the tenant. [51]

■■■ Helfrich's purported eviction occurred after he requested compensation for personal injuries allegedly suffered as a result of Valdez Motel's negligence. Because we have held that claims for compensation

41. *Id.*

42. Or.Rev.Stat. § 90.385 (2003).

43. *E.g.,* N.M. Stat. § 47–8–39 (1978) (providing an owner may not retaliate against a tenant because she, in the previous six months, "prevailed in a lawsuit as either plaintiff or defendant or has a lawsuit pending against the owner relating to the residency"); Tenn.Code Ann. § 66–28–514 (1999) (prohibiting retaliation if tenant has "made use of remedies provided under this chapter"); Wash. Rev.Code § 59.18.240 (2004) (prohibiting retaliation for "[a]ssertions or enforcement by the tenant of his rights and remedies under this chapter").

44. The statute prohibits retaliation for "[a]ctions taken in good faith, by or in behalf of the tenant, to secure or enforce any rights under the lease or rental agreement ... or under any other law of the state of New York, or of its governmental

subdivisions, or of the United States which has as its objective the regulation of premises used for dwelling...." N.Y. Real Prop. Law § 223–b(1)(b) (McKinney 2006).

45. *Pezzolanella v. Galloway,* 132 Misc.2d 429, 503 N.Y.S.2d 990 (N.Y.City Ct.1986).

46. N.Y. Real Prop. Law § 235–b (McKinney 2006), quoted in *Pezzolanella,* 503 N.Y.S.2d at 991.

47. *Pezzolanella v. Galloway,* 132 Misc.2d 429, 503 N.Y.S.2d 990, 991 (N.Y.City Ct.1986).

48. *Id.*

49. *Id.*

50. *Id.* at 992–93.

51. *Id.*

for personal injuries are not protected by URLTA's anti-retaliation statute, we must next determine whether Helfrich's pre-eviction demands asserted any other "rights and remedies granted" by URLTA.[52]

On appeal Helfrich alleges that Valdez Motel failed to comply with the requirement that it "keep all common areas of the premises in a clean and safe condition."[53] But the demand letter Helfrich's attorney sent did not explicitly or implicitly threaten to sue for noncompliance with the requirements contained in AS 34.03.100(a). The letter did refer to common law tort duties by stating that "liability in this case is fairly straightforward. An innkeeper has a clear duty under Alaska law to maintain safe conditions for their lodgers." The letter also urged Valdez Motel to seek coverage for Helfrich's "expenses and damages" from its "insurance provider," and Helfrich's subsequent complaint referred to the request for "reimburse[ment]" for "damages" from Valdez Motel's "insurance carrier." In context the demand letter refers to a liability insurer covering tort claims for negligently caused damages.

Likewise, the letter refers to typical personal injury remedies for an on-premises slip and fall: out-of-pocket medical expenses plus unspecified "damages." The demand letter did not explicitly refer to or implicitly invoke any statutory URLTA remedy. Its exclusive focus was on recovery of what would be considered common law tort damages. A tenant may sue under URLTA to "recover damages and obtain injunctive relief for any noncompliance by the landlord with ... AS 34.03.100...." But remedies for a landlord's noncompliance with URLTA generally relate to habitability or fitness disputes. URLTA damages compensate tenants who live with conditions that render a dwelling unfit, uninhabitable, or unsafe, or who are constructively evicted by those conditions.[54] Fault is irrelevant to such URLTA claims.[55] Common law tort remedies compensate plaintiffs for consequential damages resulting from personal injury, including medical expenses, loss of employment or lack of income, and pain and suffering. Helfrich's attorney's demand letter did not seek any URLTA-specific remedies, such as rent abatement or injunctive relief. Instead it requested compensation for Helfrich's medical expenses and "damages," noting that as a result of the accident Helfrich was unable to work and continued to suffer pain and interference with normal activities. Likewise, it asserted that Helfrich fell on an icy pathway "that was clearly dangerous." It therefore made out a claim of fault, implying that the landlord was negligent.

Helfrich could have threatened to sue under both tort law and URLTA, but only invoked rights granted by Alaska's tort law and only sought typical common law tort remedies. Helfrich's attorney's demand letter did not, in the words of AS 34.03.310(a)(2), seek "to enforce rights and remedies granted" under URLTA.[56]

 We conclude that subsection .310(a)(2) is inapplicable as a matter of law, and that no reasonable juror could find any facts that would support a verdict for Helfrich on his retaliation claim.[57] We therefore

**52.** AS 34.03.310(a)(2).

**53.** AS 34.03.100(a)(2).

**54.** AS 34.03.160–.210.

**55.** *See, e.g.,* AS 34.03.200 (providing tenant remedies for fire or casualty damages).

**56.** AS 34.03.310(a)(2).

**57.** Any claim Helfrich may have made in the superior court regarding unlawful ouster is waived. Helfrich states in his brief to this court that "[w]hile Helfrich believes that he was wrongfully ousted by both the unlawful eviction

notice and the retaliatory demand for enhanced rent ..., his argument here does not rely here upon Alaska's wrongful ouster statute." *See* AS 34.03.210.

Any claim of ouster in this case would be problematic in any event. Unlawful ouster involves the landlord's physical interference with the tenant's ability to inhabit the premises. *Schaefer v. Murphey,* 131 Ariz. 295, 640 P.2d 857, 860 (1982) (holding that service of unlawful notice to quit, followed by tenant's vacating premises, was not unlawful ouster); *see also* 49 Am.Jur. 2d *Landlord and Tenant* § 515 (2006) (contrasting ouster with constructive eviction so as to suggest that ouster involves "physical dispossession"). Valdez Motel did not physically interfere with Helfrich's possession.

hold that the superior court did not err in granting Valdez Motel's motion for directed verdict on Helfrich's URLTA claims.[58]

### D. Rule 82 Attorney's Fees

■ The trial court awarded Valdez Motel, as the prevailing party, attorney's fees under Alaska Rule of Civil Procedure 82.[59] Helfrich appears to argue that we should reverse that award because Valdez Motel should not have prevailed. Because the superior court did not err in denying Helfrich's motion for summary judgment and granting Valdez Motel's motion for directed verdict, Valdez Motel was the prevailing party. Valdez Motel was therefore entitled to recover Rule 82 attorney's fees.[60]

## IV. CONCLUSION

The superior court orders denying Helfrich's motion for partial summary judgment, granting Valdez Motel's motion for directed verdict, and awarding attorney's fees are AFFIRMED.

WINFREE, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

WINFREE, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

I respectfully dissent from the court's decision to affirm the trial court's directed verdict dismissing Richard Steve Helfrich's statutory retaliation claim under Alaska's Uniform Residential Landlord and Tenant Act.[1]

One of the purposes and policies underlying the Act is to encourage landlords to properly maintain rental premises.[2] Under AS 34.03.100 a landlord is required to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition"[3] and to "keep all common areas of the premises in a clean and safe condition."[4] "Premises" is defined broadly to include a dwelling unit and related structures, as well as "grounds, areas, and facilities held out for the use of tenants generally."[5]

Prior to the Act landlords had some immunity from liability for personal injuries caused by dangerous conditions of a rental premises.[6] But in *Newton v. Magill* we held that because of the legislature's adoption of the Act[7] and our own previous approval of "the trend toward a more general duty of care for landowners,"[8] the common law rules of landlord immunity were in conflict with modern public policy.[9] We held that landlords are not strictly liable as insurers of the fitness of the rental premises, but rather have a "duty to use reasonable care to discover and remedy conditions which present an unreasonable risk of harm under the cir-

---

**58.** Helfrich also states that "[e]ven if, *arguendo*, these actions were not within Alaska's specific statutory prohibition on retaliatory conduct, they are certainly a breach of the URLTA duty of good faith" contained in AS 34.03.320. Helfrich does not elaborate on this argument. The argument is therefore waived because it is inadequately briefed. *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001) (stating that generally "issues not briefed or only cursorily briefed are considered waived").

**59.** Alaska Rule of Civil Procedure 82 provides for award of attorney's fees to the prevailing party in civil litigation. If the prevailing party recovers no money judgment, attorney's fees are calculated according to Rule 82(b)(2).

**60.** Helfrich raises no objection to the award of Rule 82 attorney's fees beyond his argument that he should have prevailed.

**1.** AS 34.03.

**2.** AS 34.03.010(b)(2). The legislature has directed that the Act "be liberally construed and applied to promote its underlying purposes and policies." AS 34.03.010(a).

**3.** AS 34.03.100(a)(1).

**4.** AS 34.03.100(a)(2).

**5.** AS 34.03.360(14).

**6.** *Newton v. Magill*, 872 P.2d 1213, 1216 (Alaska 1994) (identifying Alaska's common law rules of landlord liability).

**7.** *Id.* at 1214, 1217 (citing AS 34.03.100).

**8.** *Id.* at 1217 (citing *Webb v. City & Borough of Sitka*, 561 P.2d 731, 733 (Alaska 1977)).

**9.** *Id.* at 1217–18.

cumstances."[10] We reached that holding: because it would be inconsistent with a landlord's continuing duty to repair premises imposed under the [Act] to exempt from tort liability a landlord who fails in this duty. The legislature by adopting the [Act] has accepted the policy reasons on which the warranty of habitability is based. These are the need for safe and adequate housing, recognition of the inability of many tenants to make repairs, and of their financial disincentives for doing so, since the value of permanent repairs will not be fully realized by a short-term occupant.[11]

The Act provides some protections to a tenant who complains about the condition of the rental premises. A landlord "may not retaliate ... by bringing or threatening to bring" eviction proceedings "after the tenant has complained to the landlord of a violation of AS 34.03.100."[12] For an example with some relevance to this case, a landlord should be statutorily prohibited from giving a tenant an eviction notice in retaliation for the tenant's complaint of an unsafe accumulation of ice on a common area pathway outside a fire-door exit of the tenant's apartment building. In *Vinson v. Hamilton* we stated that the anti-retaliation provisions of AS 34.03.310 reflect a public policy of encouraging tenants to assert their rights under the Act without fear of eviction.[13]

A tenant has two separate, but cumulative, statutory remedies for a landlord's failure to comply with AS 34.03.100.[14] Faced with "a noncompliance with AS 34.03.100 materially affecting health and safety," the tenant may give notice that the tenancy will terminate unless the breach is remedied.[15] If the landlord does not remedy the breach "by repairs *or the payment of damages* or otherwise," the tenancy terminates pursuant to the notice and the tenant may vacate the premises without further rental obligations.[16] In addition a tenant "may *recover damages* and obtain injunctive relief for any noncompliance by the landlord" with AS 34.03.100.[17]

The Act also provides some protections for the assertion of these rights and remedies. A landlord "may not retaliate ... by bringing or threatening to bring" eviction proceedings "after the tenant has ... sought to enforce rights and remedies granted the tenant under [the Act]."[18] If in the earlier example the tenant actually sued the landlord over the unsafe ice accumulations, the landlord should be statutorily prohibited from giving the tenant an eviction notice in retaliation for the attempt to seek compensation for damages caused by, or injunctive relief to ameliorate, the unsafe condition of the premises.[19]

In this case Helfrich asserted a claim that Valdez Motel Corporation illegally retaliated against him with an eviction notice after his attorney made contact to seek the payment of medical bills and related damages incurred as a result of Valdez Motel's alleged failure to maintain a common area in a safe condition. The trial court found that Helfrich was a tenant of Valdez Motel and that his tenancy was covered by the Act, and Valdez Motel does not contest that finding.

10. *Id.* at 1218.

11. *Id.* at 1217.

12. AS 34.03.310(a)(1). "Complained" is not defined in the Act, but the relevant Webster's definition of "complain" is "to express discontent [or] dissatisfaction." Webster's Third New International Dictionary 464 (2002). *See* AS 01.10.040(a) (instructing that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage").

13. 854 P.2d 733, 736 (Alaska 1993).

14. AS 34.03.160(a)-(c).

15. AS 34.03.160(a).

16. *Id.* (emphasis added).

17. AS 34.03.160(b)-(c) (emphasis added).

18. AS 34.03.310(a).

19. The statutory remedy afforded a victim of illegal retaliation is limited. Under AS 34.03.310(b) a tenant may assert retaliation as a defense to an eviction action and is entitled to the same statutory remedies afforded to a tenant expressly or constructively evicted in violation of law; in the latter event "the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount not to exceed one and one-half times the actual damages." AS 34.03.210.

In his letter to Valdez Motel, Helfrich's attorney stated that on March 21, 2005, Helfrich slipped and fell on an ice accumulation "on the path outside the back (fire-exit) door," which he noted to be "a well-used access route [that] has been the scene of other accidental falls during the past winter." He advised Valdez Motel that Helfrich's medical bills were in excess of $40,000. He asked Valdez Motel to assume its "rightful responsibility" and make every effort to obtain from its insurer "full coverage for all expenses and damages that Mr. Helfrich has suffered."

After receipt of the letter Valdez Motel's representative placed what Valdez Motel later admitted was intended to be an eviction notice on Helfrich's room door, stating in part: "I really don't appreciate getting a threatening letter from an attorney. I think . . . it is best you move out as fast as you can. I recommend perhaps moving in with whoever gave you such back stabbing [sic] advice. If no one, I guess it is time for a tent (on someone else's property)." Helfrich vacated the premises immediately after finding the eviction notice.

The trial court granted Valdez Motel's motion for a directed verdict on Helfrich's retaliation claim at the close of his case-in-chief. The trial court conceded Helfrich had presented evidence that he sought to enforce rights, but concluded the rights Helfrich was attempting to enforce were not rights related to his tenancy. The trial court stated that a negligence action stands on its own without any connection to a landlord-tenant relationship and that seeking damages for personal injuries caused by unsafe conditions on the landlord's property is not encompassed within AS 34.03.160(b).

By affirming the trial court's decision, the court ignores or repudiates *Newton v. Magill* and *Vinson v. Hamilton* and the policies underlying those cases, and also ignores the legislature's statement of the Act's purposes and policies and its mandate that the Act be liberally construed to promote those purposes and policies.

The court proceeds as if a landlord's tort duties to tenants rest only on the evolution of the common law duties of property owners and have nothing whatsoever to do with the Act and its modification of the tenancy relationship between the landlord and tenant. *Newton v. Magill* dispels that notion: a landlord's tort duties to tenants are what they are today because of the Act.[20] The landlord's duty under AS 34.03.100 *is* the tort duty of reasonable care under all of the relevant circumstances.[21] Failure to comply with that duty is both a tort and a breach of AS 34.03.100.

The court ably details the reasons this interpretation of the Act would promote its purposes and policies, but instead adopts a "narrower reading" of the Act. This narrow reading of the Act is in direct conflict with: (1) the legislature's mandate for liberal application of the Act; (2) the liberal effect given the Act in *Newton v. Magill*; and (3) *Vinson v. Hamilton's* liberal interpretation and construction of the public policy underlying the anti-retaliation provisions of AS 34.03.310. From a practical standpoint, the court's narrow reading of the Act produces a perverse framework of anti-retaliation protection.

The tenant who complains about unsafe conditions of a stairway cannot be threatened with eviction for her complaints—but when her child is injured on the unsafe stairway and she seeks to have the landlord take responsibility and pay the child's medical bills, she can be evicted with impunity. The tenant who complains about plumbing problems cannot be threatened with eviction for his complaints—but when the plumbing explodes, raw sewage covers his basement apartment, and he seeks to have the landlord take responsibility and pay for cleaning or replacing his personal property, or for precautionary inoculations against disease, he can be evicted with impunity. This should not be the law of Alaska.

We should promote the statutory purpose of encouraging landlords to maintain rental premises. We should promote the public policy of encouraging tenants to assert their rights under the Act without fear of eviction

---

**20.** *Newton*, 872 P.2d at 1217–18.

**21.** *Id.* at 1218.

threats. We should acknowledge *Newton v. Magill* and liberally construe the phrase "damages ... for any noncompliance by the landlord with ... AS 34.03.100," to include tort and contract damages.[22] A liberal interpretation of AS 34.03.100(a) and (b) cannot lead to the result the court reaches today.[23]

The court seems to fear that acknowledging a retaliation claim under Helfrich's circumstances is an acknowledgment of some kind of strict liability standard accompanying the landlord's repair and maintenance obligations under AS 34.03.100. But we expressly rejected that possibility in *Newton v. Magill.*[24] Acknowledging the validity of Helfrich's claim simply means that whether a tenant is complaining about—or *suing about*—the landlord's failure to maintain the rental premises as required by AS 34.03.100, the landlord cannot threaten eviction of the tenant in retaliation for the tenant's assertion of rights under AS 34.03.160 and AS 34.03.100.[25]

I would reverse the trial court's directed verdict on Helfrich's statutory retaliation claim and remand for trial of that claim.

**22.** The Act does not define "damages," nor does the Act expressly limit "damages," but common usage of the term certainly favors Helfrich and supports my view of *Newton v. Magill.* Webster's defines "damages" as compensation "imposed by law for a wrong or injury caused by a violation of a legal right." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571 (2002). Black's defines "damages" as monetary "compensation for loss or injury." BLACK'S LAW DICTIONARY 416 (8th ed.2004).

**23.** The court also seems to hold that unless a tenant expressly refers to a specific provision of the Act in a communication to a landlord, the communication will not be interpreted to refer to rights under the Act at all. This is form over substance and clearly inconsistent with the purposes and policies of the Act, especially the anti-retaliation provisions of AS 34.03.310. The relevant inquiry should be whether the rights asserted by the tenant are protected by the Act, not whether the tenant is conscious of the specifics of the Act. The fact that Helfrich's attorney sought medical bill reimbursement and damages for injuries alleged from an unsafe condition on the rental premises is sufficient to invoke the protections of AS 34.03.100(b) and AS 34.03.310(a).

**24.** 872 P.2d at 1218.

**25.** I also note my view that a demand or suit for compensation made in the context of a continuing tenancy can be easily construed as an expression of discontent or dissatisfaction with the landlord's performance of obligations under AS 34.03.100, *i.e.,* a complaint protected from retaliation by AS 34.03.310. *See Newton,* 872 P.2d at 1216.